# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION

CIVIL ACTION NO. 3:17-CV-00603-JHM

ROSE M. PHILLIPS, administratrix                                  PLAINTIFFS
of the estate of William Culpepper,
deceased, et al.,

v.

PTS OF AMERICA, LLC, et al.                                         DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion to dismiss by defendants Louisville/Jefferson County Metro Government ("Louisville Metro") and Mark Bolton. (DN 37.) Fully briefed, this matter is ripe for decision.

## I. BACKGROUND

According to the second amended complaint (DN 29), William Culpepper was arrested in Louisville on an outstanding warrant from Mississippi and taken to Louisville Metro Department of Corrections ("LMDC"). On January 29, 2016, Culpepper was to be transported by defendant PTS of America ("PTS"), a prisoner transportation service, from LMDC to Pearl, Mississippi, with an overnight stop in Mississippi County, Missouri. Before leaving LMDC, Culpepper began complaining of abdominal pain related to a bleeding ulcer. Medical staff at LMDC indicated to PTS staff that Culpepper had no history of such pain and that he should be given antacids. PTS staff were also advised that Culpepper was diabetic and had not been taking his medications as required.

While being transported, Culpepper continued to complain of abdominal pain and was given antacids. His blood sugar levels were taken twice during the trip from Louisville to Missouri, and on both occasions his levels were higher than what was considered normal. When

the PTS transport van arrived in Missouri after a thirteen-hour trip, Culpepper was unable to exit the van and was barely responsive. He had to be carried into the Missouri County Department of Corrections, but the jail would not admit him until he was stable and medically cleared. Culpepper lost consciousness, but he was not taken to the hospital. An ambulance was called, but by the time it arrived, Culpepper had no pulse. He could not be revived, and Culpepper ultimately died from a perforated duodenal ulcer.

The present complaint was brought by plaintiffs Rose M. Phillips, administratrix of the estate of Culpepper; Michelle Myers, the mother of Culpepper's minor daughter, W.C.; and Brandon Green, the son of Culpepper. The plaintiffs have twice amended their complaint to assert claims against various defendants related to PTS, Louisville Metro, and Mississippi County. As relevant to the present motion to dismiss, the plaintiffs have asserted federal and state-law claims against Louisville Metro and Mark Bolton, the director of LMDC, in his individual capacity. Both have moved to dismiss all claims against them pursuant to Fed. R. Civ. P. 12(b)(6).[1]

## II. STANDARD OF REVIEW

Upon a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), a court "must construe the complaint in the light most favorable to plaintiffs," *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citation omitted), "accept all well-pled factual allegations as true," *id.*, and determine whether the "complaint . . . states a plausible claim for relief.*" Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Under this standard, the plaintiff must provide the grounds for its entitlement to relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp.*

---

[1] While the complaint and the present motion to dismiss were both filed in the Eastern District of Kentucky, that Court recently transferred the case in its entirety to this district, including the pending motion to dismiss. (DN 50, 51.)

*v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff satisfies this standard only when it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A complaint falls short if it pleads facts "merely consistent with a defendant's liability" or if the alleged facts do not "permit the court to infer more than the mere possibility of misconduct." *Id*. at 678–79. Instead, a complaint "must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id*. at 677 (quoting Fed. R. Civ. P. 8(a)(2)). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### III. DISCUSSION

#### A. LOUISVILLE METRO

The second amended complaint asserts two claims against Louisville Metro. Count I seeks to hold Louisville Metro liable for the deprivation of Culpepper's constitutional rights pursuant to 42 U.S.C. § 1983, while Count III is a state-law claim for wrongful death. Turning to the wrongful death claim first, Louisville Metro argues that it is protected against any state-law claims under the doctrine of sovereign immunity. The plaintiffs concede in their response that Louisville Metro enjoys sovereign immunity from their state-law claims. *See Schwindel v. Meade Cty*., 113 S.W.3d 159, 163 (Ky. 2003) ("A county government is cloaked with sovereign immunity"). Therefore, Louisville Metro's motion to dismiss Count III is **GRANTED**.

As for the § 1983 claim, Louisville Metro argues that the claim should be dismissed, as the complaint fails to state a claim for municipal liability under § 1983. Municipal governments are considered "persons" who may be sued under § 1983, but the unconstitutional act at issue

must be performed pursuant to a governmental policy or custom in order to establish municipal liability. *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 690–91 (1978). Count I does seek to hold Louisville Metro liable for the violations of Culpepper's constitutional rights that resulted from LMDC's "written policies, procedures . . . customs and practices." (Pl.'s Second Am. Compl. [DN 29] ¶ 27.) However, the complaint does not state what those policies or customs were. There are statements that suggest these policies or customs were related to the training and supervision of staff at LMDC, but the complaint contains no factual content upon which the Court could find that the plaintiffs are plausibly entitled to relief, such as what these policies or customs regarding training and supervision were, why they were inadequate, and how they contributed to the violation of Culpepper's constitutional rights. District courts in the Sixth Circuit have consistently interpreted *Iqbal* so as to require "more than bare statements that the alleged constitutional violation was caused by a policy or custom to survive a motion to dismiss." *Vidal v. Lexington Fayette Urban Cty. Gov.*, 2014 WL 4418113, at *3 (E.D. Ky. Sep. 8, 2014). Allegations that a municipality "negligently trained and/or supervised" its employees, or that it "failed to instruct, supervise, control, and discipline" its employees, *id.* at *3 (quoting complaint), are "naked assertions devoid of further factual enhancement [that] contribute nothing to the sufficiency of the complaint." *Id.* at *4. Such a complaint "merely recites the legal requirements for a claim against a municipality without any factual allegations that would raise a right to relief above the speculative level." *Id. See also Kustes v. Lexington-Fayette Urban Cty. Gov.*, 2013 WL 4776343, at *5 (E.D. Ky. Sep. 3, 2013) ("The Plaintiff must describe what the official custom or policy was and describe how it was violated"); *Hutchinson v. Met. Gov. of Nashville and Davidson Cty.*, 685 F. Supp. 2d 747, 751 (M.D. Tenn. 2010) (failure to "include any facts related to a . . . municipal custom, policy or practice" required court to dismiss

complaint); *Ghaster v. City of Rocky River*, 2010 WL 2802685, at *7 (N.D. Ohio May 12, 2010) ("Plaintiffs are in fact required to identify the practice or policy that forms the basis of their claim"). Under this pleading standard, the complaint fails to state a claim for municipal liability under § 1983. Therefore, Louisville Metro's motion to dismiss Count I is **GRANTED**.

### B. DIRECTOR BOLTON

The plaintiffs assert three claims against Director Bolton. Count I seeks to hold Bolton liable pursuant to § 1983 for violations of Culpepper's constitutional rights, while Count II asserts a state-law claim of negligence. Count III asserts a claim for wrongful death. Bolton seeks dismissal of the § 1983 claim, as the plaintiffs have failed to plausibly allege a claim for which relief could be granted, and he seeks dismissal of the two state-law claims on the grounds of qualified immunity. The Court will discuss each in turn.

#### 1. § 1983 CLAIM

Beginning with the § 1983 claim, the plaintiffs allege that Culpepper's rights under the Eighth and Fourteenth Amendments were violated, as various individuals, including Bolton, were deliberately indifferent to his medical needs while he was a pre-trial detainee. (*See* Pl.'s Second Am. Compl. [DN 29] ¶¶ 1–2.) Count I asserts two different theories under which Bolton could be liable for this deprivation of constitutional rights. First, Bolton is alleged to have been deliberately indifferent to Culpepper's medical needs through his own "acts." (*Id.* ¶ 27.) And second, Bolton's alleged failure to adequately train and supervise his staff at LMDC amounted to deliberate indifference. (*Id.*)

Turning to the first theory, a claim for deliberate indifference to medical needs must plead facts that demonstrate two elements:

> [A] plaintiff must satisfy an objective component and a subjective component. The objective component is satisfied by showing a

> sufficiently serious condition that denial of needed medical care would result in the unnecessary and wanton infliction of pain or pose a substantial risk of serious harm. To satisfy the subjective component, a plaintiff must allege and ultimately prove that the defendant was aware of facts from which the inference could be drawn that a substantial risk of harm would exist if needed care were not provided, that the defendant actually drew the inference, and that the defendant acted in disregard of that risk.

*Amick v. Ohio Dep. of Rehab. & Corr.*, 521 F. App'x 354, 358 (6th Cir. 2013) (internal citations omitted). Bolton does not argue that the plaintiffs fail to establish the objective component of a sufficiently serious condition; he only argues that the complaint fails to adequately plead facts that would establish the subjective component, as the plaintiffs do not allege that he was even aware of Culpepper's presence in the jail, much less his condition and the substantial risk posed by it.

There is only one factual allegation in the complaint related to Bolton:

> Despite the fact that PTS policies and procedures discouraged van transport of diabetic inmates, much less a diabetic inmate complaining of stomach pain and a bleeding ulcer, Defendants Louisville Metro Government, Bolton, Correct Care and McKinney nonetheless surrendered custody, and Defendants PTS, Haskins, Crook and Earnhart accepted custody, of Mr. Culpepper . . .

(Pl.'s Second Am. Compl. [DN 29] ¶ 19.) The paragraph does state that Bolton surrendered custody of Culpepper; while it may be ambiguous as to whether Bolton was the person who actually decided to surrender custody or whether he was simply responsible for all individuals who came and went from LMDC as its director, the Court examines this phrase in a light most favorable to the plaintiffs, *see Bredesen*, 500 F.3d at 527, and concludes that it does successfully plead that Bolton was the person, or one of many people, who actually made the decision to surrender custody of Culpepper on January 29.

However, the paragraph fails to plead any facts that would establish that Bolton did this with an awareness of the risk of harm posed by surrendering Culpepper without providing him medical treatment. The first clause of the paragraph indicates that PTS had policies discouraging van transport of diabetic inmates and suggests that this policy should have been enforced due to Culpepper's diabetes and stomach condition, but it does not state that Bolton knew of these policies or that he knew of Culpepper's condition. Bolton is not among the specific defendants that are identified in the complaint as having been made aware of Culpepper's complaints about his stomach ulcer and its associated pain. (*See* Pl.'s Second Am. Compl. [DN 29] ¶ 18.) At best, the complaint establishes that Bolton was physically present and made the decision to surrender custody of Culpepper, but without facts indicating he was aware of the risk of harm posed by Culpepper's condition if it went untreated, the complaint does not state a claim for deliberate indifference against Bolton based upon his own actions. *Compare with Scott v. Ambani*, 577 F.3d 642, 648 (6th Cir. 2009) (plaintiff stated a claim for deliberate indifference when he alleged that defendant doctor was aware of plaintiff's recent treatment "for prostate cancer, and [that he] had severe back and leg pain, as well as a testicular lump that was hard and painful").

As to whether Bolton's alleged failure to train or supervise his staff can form the basis of any liability, the Sixth Circuit has held that "a prerequisite of supervisory liability under § 1983 is unconstitutional conduct by a subordinate of the supervisor." *McQueen v. Beecher Cmty. Schs.*, 433 F.3d 460, 470 (6th Cir. 2006). Additionally, though, a plaintiff must show that "the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the [supervisor] at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers," as liability cannot be premised on a theory of *respondeat superior*. *Id.* (quotations

omitted). As stated above, the complaint does adequately allege that Bolton was at least one of many individuals who was involved in the decision to surrender custody of Culpepper; as such, the plaintiffs have sufficiently stated that Bolton "directly participated in" the release of Culpepper. And further, the complaint states that Bolton was "responsible for the . . . training [and] supervision . . . of Correct Care and McKinney," defendants that Culpepper alleges were aware of the risk of harm posed by his stomach ulcer and were deliberately indifferent to his medical needs. (Pl.'s Second Am. Compl. [DN 29] ¶¶ 7, 14.) Thus, at this stage at least, the plaintiffs have adequately alleged unconstitutional conduct by a subordinate of Bolton.[2] *Accord Horn v. City of Covington*, 2015 WL 4042154, at *7 (E.D. Ky. July 1, 2015) (denying motion to dismiss claim of supervisor liability, as plaintiff "pled that [the defendant], a supervisor, actively 'participated' with the other officers in the beating and arrest").

Since the complaint plausibly alleges unconstitutional conduct by a subordinate of Bolton's and his direct involvement in Culpepper's release, the claim for supervisory liability may proceed. Therefore, Bolton's motion to dismiss Count I is **DENIED**.

### 2. STATE-LAW CLAIMS

Bolton has also moved to dismiss the plaintiffs' state-law claims for negligence and wrongful death, as he is entitled to qualified immunity from those claims. Under Kentucky law,

> [q]ualified official immunity applies to the negligent performance by a public officer or employee of (1) discretionary acts or functions, i.e., those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment . . . ; (2) in good faith; and (3) within the scope of the employee's authority.

---

[2] Bolton argues that he has no supervisory authority over any Correct Care employee, but given that this case is only at the pleading stage, the Court cannot credit any factual statements made in the motion to dismiss. Taking the complaint in a light most favorable to the plaintiffs, the allegation that Bolton did in fact possess supervisory authority over Correct Care employees is sufficient at this stage for the claim to proceed.

*Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001). Bolton argues that the act of supervising employees is a discretionary act. He also argues that there are no allegations in the complaint that he acted in bad faith or outside the scope of his employment. However, as the Court has noted, the complaint does not simply allege that Bolton supervised employees; it alleges that Bolton was involved in the decision to surrender custody of Culpepper. Further, the complaint adequately alleges bad faith on the part of Bolton, as it states that his "conduct was intentional and grossly negligent, indicated active malice toward Mr. Culpepper and a total, deliberate and reckless disregard for and indifference to his life and his constitutional and common law rights . . ." (Pl.'s Second Am. Compl. [DN 29] ¶ 15.) *See Wales v. Pullen* 390 S.W.3d 160, 167 (Ky. Ct. App. 2012) (bad faith element of qualified immunity looks to whether the official "acted in an objectively unreasonable way in carrying out his duties"); *Yanero*, 65 S.W.3d at 523 ("Bad faith can be predicated on a violation of a constitutional, statutory, or other clearly established right which a person in the public employee's position presumptively would have known was afforded to a person in the plaintiff's position . . . or if the officer or employee willfully or maliciously intended to harm the plaintiff or acted with a corrupt motive"). Given that there is a factual dispute as to what action Bolton actually took and whether any such actions were taken in bad faith, the Court cannot at this time determine if he is entitled to qualified immunity. *See Jenkins Ind. Schs. v. Doe*, 379 S.W.3d 808, 812 (Ky. Ct. App. 2012) (refusing to determine whether defendants acted in bad faith before development of sufficient factual record); *Wesley v. Campbell*, 779 F.3d 421, 433–34 (6th Cir. 2015) (in discussing federal qualified immunity, noting that "it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity" due to fact-intensive nature of the defense). Therefore, Bolton's motion to dismiss the state-law claims is **DENIED**.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motion to dismiss by defendants Louisville/Jefferson County Metro Government and Mark Bolton (DN 37) is **GRANTED IN PART** and **DENIED IN PART**. Counts I and III against Louisville Metro are **DISMISSED**.

cc: counsel of record