UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| ROSE M. PHILLIPS, Administratrix of the Estate of William Culpepper, Jr., et al. | ) ) ) | Civil Action No. 3:17-CV-603-CHB |
| Plaintiffs, | ) ) | |
| v. | ) ) | **MEMORANDUM OPINION AND ORDER** |
| PTS OF AMERICA, LLC, et al., | ) ) | |
| Defendants. | ) | |

**\*\*\*    \*\*\*    \*\*\*    \*\*\***

This matter is before the Court on Plaintiffs' Motion to Reconsider Dismissal of the CCS

Defendants ("Motion to Reconsider"), [R. 160], in which Plaintiffs ask the Court to reconsider

that portion of its March 31, 2021 Memorandum Opinion and Order granting summary judgment

in favor of Defendants Correct Care Solutions, LLC ("Correct Care") and Nurse La-Shanti

McKinney, [R. 158]. Correct Care and Nurse McKinney filed a response in opposition, [R. 165],

and Plaintiffs replied, [R. 166]. This matter is therefore fully briefed and ripe for review. For the

reasons set forth herein, the Court will deny Plaintiffs' Motion to Reconsider, [R. 160].

## I.    BACKGROUND

This suit arises from the death of William Culpepper, Jr. A full recitation of the facts

surrounding his death is set forth in detail in the Court's March 31, 2021 Memorandum Opinion

and Order. [R. 158, pp. 1–9]. A brief summary of the relevant facts is as follows.

On December 15, 2015, Culpepper was arrested in Louisville, Kentucky on an

outstanding arrest warrant from Mississippi. [R. 149-1 (Arrest Citation)]. He was housed at

Louisville Metro Department of Corrections ("LMDC") prior to his transfer to Mississippi. On

1

January 29, 2016, Culpepper departed LMDC in a van owned by PTS of America, LLC ("PTS"), a prison transport service. The van was operated by three PTS officers who planned to transport Culpepper to the Mississippi County Detention Center ("MCDC") in Charleston, Missouri, where he would stay overnight before being transported to his final destination in Mississippi.

Prior to Culpepper's departure from LMDC, La-Shanti McKinney, a licensed practical nurse ("LPN") employed by Correct Care, was called to the booking floor to provide the PTS officers with a supply of Culpepper's diabetes medications and paperwork. [R. 149-4, pp. 46–48 (Deposition of La-Shanti McKinney)]. When Nurse McKinney arrived in the booking area, an LMDC guard advised her that Culpepper was complaining of abdominal pain. *Id.* at 47. Nurse McKinney observed Culpepper lying on the ground in the fetal position, though she did not notice any other obvious signs of distress, such as sweating or agitation. *Id.* at 47, 49, 50–51. She asked Culpepper about his pain, and he told her that he had a history of ulcers and his stomach hurt. *Id.*

Nurse McKinney, unsure whether Culpepper could be cleared for transport, contacted Cody Pittman, the Director of Nursing, for assistance.[1] *Id.* at 51. Pittman accompanied Nurse McKinney back to the booking area, where Nurse McKinney observed Pittman interacting with Culpepper and looking something up on the computer. *Id.* at 46, 49, 52. Nurse McKinney believed that Pittman was taking Culpepper's vital signs. *Id.* at 54. She did not interact further with Culpepper and returned to her second-floor office. *Id.* A few minutes later, Pittman called Nurse McKinney back to the booking area so she could provide Culpepper's medications to a PTS officer. *Id.* at 69. She did so. *Id.* at 59. According to the testimony of the PTS officer, she advised Nurse McKinney and Pittman that Culpepper was complaining of a bleeding ulcer, but

---

[1] Cody Pittman could not recall interacting with Culpepper. *See, e.g.*, [R. 154-6, p. 9].

Nurse McKinney explained that there was no history of an ulcer in his file. [R. 149-2, p. 98 (Deposition of Elva Earnhart)]. Nurse McKinney testified that a PTS officer told her and Pittman that the transport crew was behind schedule and Culpepper could be assessed in the next county. [R. 149-4, pp. 50, 57]. Culpepper then boarded the PTS van and departed LMDC at 11:45 a.m. *Id.* at 40.

The Court's March 31, 2021 Memorandum Opinion and Order provides a detailed summary of the facts surrounding Culpepper's arrival at MCDC and the events that followed. [R. 158, pp. 3–9]. For purposes of this motion, however, the Court need not rehash those facts in detail. Instead, the Court summarizes the events at MCDC as follows.

The PTS van arrived at MCDC around 12:10 a.m. on January 3, 2016. [R. 130-10, p. 36 (Supplemental Narrative Report by William Dorris)]. Culpepper had to be carried from the van into the jail by William Dorris, an MCDC corrections officer and dispatcher, and a PTS officer. *See, e.g.*, [R. 136]. The PTS officers informed Dorris and another MCDC corrections officer, Faith Altamirano, that Culpepper was a diabetic and had a blood sugar reading of over 600 mg/dl.[2] [R. 135-1, p. 24; R. 135-2, pp. 17, 20, 28–30]. Over the next several minutes, Culpepper's condition continued to deteriorate; however, an ambulance was not called until approximately 12:41 a.m. [R. 134-2, p. 3]; *see also* [R. 158, pp. 5–7]. The ambulance arrived at approximately 12:50 a.m., at which time Culpepper was unconscious and had no pulse. *See, e.g.*, [R. 134-2]. He could not be revived. Defendant Cory Hutcheson, the MCDC Administrator, and Keith Moore, the Sherriff of Mississippi County, arrived on the scene later. [R. 135-3, p. 9; R. 135-4, p. 6]. The coroner also arrived and later concluded that Culpepper's cause of death was a perforated duodenal ulcer. [R. 135-4, p. 7; R. 153-2, p. 6].

---

[2] A "normal" blood sugar reading is in the range of 75–100 mg/dl. *See Hawley v. Gelabert*, No. 1:06-CV-209, 2009 WL 2515685, at *4 (W.D. Mich. Aug. 14, 2009).

The administratrix of Culpepper's estate, his son, and his minor daughter (by and through her mother) filed the present action on December 21, 2016. [R. 1]. In their Third Amended Complaint, [R. 78], they name as defendants Correct Care; Nurse McKinney; Mississippi County, Missouri; Sherriff Moore, individually; Administrator Hutcheson, individually; Dorris, individually; and Altamirano individually. The following defendants were also named but have since been dismissed: Louisville Metro Government; Mark Bolton, LMDC's Director; and PTS and the three PTS officers. [R. 56; R. 111; R. 148]. Against the remaining defendants, Plaintiffs asserted the following causes of action: a 42 U.S.C. § 1983 claim for deliberate indifference to Culpepper's serious medical needs (Count I, against all defendants); negligence and gross negligence (Count II, against Correct Care and all individual defendants); wrongful death under Kentucky Revised Statute ("KRS") § 411.130 (Count III, against all defendants); and vicarious liability for the state common law torts (Count IV, against Correct Care). [R 78, pp. 9–10].

After discovery concluded, Defendants Mississippi County, Dorris, Altamirano, Hutcheson, and Moore (collectively, the "Missouri Defendants") moved for summary judgment. [R. 130]. Defendants Correct Care and Nurse McKinney also moved for summary judgment. [R. 149]. Both motions were fully briefed. [R. 134; R. 139; R. 143; R. 153; R. 155]. On March 31, 2021, the Court entered its Memorandum Opinion and Order granting in part and denying in part the Missouri Defendants' Motion for Summary Judgment and granting Correct Care and Nurse McKinney's Motion for Summary Judgment. [R. 158].

With respect to the § 1983 claim against Nurse McKinney, the Court held that Plaintiffs failed to prove the objective element of that claim. [R. 158, pp. 39–41]. In other words, the Court found that there was no genuine issue of material fact on the issue of whether Culpepper presented to Nurse McKinney with an obvious serious medical need. *Id.* Further, the Court held

4

that, even assuming Culpepper presented with an obvious serious medical need, Plaintiff failed to prove the subjective element of their § 1983 claim. *Id.* at 41–45. On that issue, the Court held that the record lacked sufficient evidence from which a reasonable jury could conclude that (1) Nurse McKinney was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and (2) that she drew that inference and then disregarded the risk. *Id.* Because there was no genuine dispute of material fact with respect to either element of the § 1983 claim, that claim failed.

The Court also held that Plaintiffs' § 1983 claim against Correct Care failed to survive summary judgment. *Id.* at 46–53. The Court first noted that Correct Care must be treated like a municipality for purposes of the Court's § 1983 analysis, but a municipality generally could not be held liable under § 1983 unless the individual defendant (here, Nurse McKinney) committed a constitutional violation. *Id.* at 46. Further, even assuming that Correct Care could be held liable under § 1983 in the absence of individual liability, Plaintiffs had failed to present evidence supporting that theory. *Id.* at 46–53. The Court therefore granted summary judgment in favor of Correct Care on that claim.

Finally, with respect to the state law claims against Correct Care and Nurse McKinney, the Court granted summary judgment in favor of the defendants on both the negligence/gross negligence and wrongful death claims. *Id.* at 53–56. The Court held that Plaintiffs failed to put forth adequate evidence of a breach of the standard of care and causation. *Id.* As a result, both state law claims failed. *Id.*

The Court therefore granted summary judgment in favor of Correct Care and Nurse McKinney on each of Plaintiffs' claims against those defendants. This Motion to Reconsider followed. [R. 160].

## II.     LEGAL STANDARD

Plaintiffs have filed a "Motion to Reconsider Dismissal of the CCS Defendants," but the Federal Rules do not contemplate motions to reconsider. *Smith v. Hudson*, 600 F.2d 60, 62 (6th Cir. 1979). However, Plaintiffs cite to Federal Rule of Civil Procedure 59(e) in their motion. [R. 158, p. 1]. That rule allows a party to file a motion to alter or amend a judgment within twenty-eight days of the entry of the judgment. Fed. R. Civ. P. 59(e). The Sixth Circuit has held "that a motion which asks a court to vacate and reconsider, or even to reverse its prior holding, may properly be treated under Rule 59(e) as a motion to alter or amend a judgment." *Smith*, 600 F.2d at 62 (citations omitted); *see also Inge v. Rock Financial Corp.*, 281 F.3d 613, 617 (6th Cir. 2002) (citations omitted); *Hudson v. United Parcel [Service], Inc.*, No. 3:19-cv-886-DJH-CHL, 2021 WL 2404353, at *2 (W.D. Ky. June 11, 2021). Here, Plaintiffs filed their Motion to Reconsider within twenty-eight days of the entry of the Court's Memorandum Opinion and Order, and they ask the Court to vacate and reconsider a portion of that decision, specifically citing Rule 59(e). *See* [R. 160; R. 166]. The Court therefore understands that Plaintiffs intended to file a Rule 59(e) motion to alter or amend.

On this point, Correct Care and Nurse McKinney argue that Plaintiffs motion "is more properly considered as one asserted under Fed. R. Civ. P. 54(b)," not Rule 59(e). [R. 165, p. 2]. Rule 54(b) allows the Court to "direct entry of a final judgment as to one or more, but fewer than all, claims or parties" so long as there is no just reason for delay. *See* Fed. R. Civ. P. 54(b). The Sixth Circuit has approved of Rule 54(b) as a proper procedural vehicle for bringing motions to reconsider interlocutory orders. *Rodriguez v. Tennessee Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004). Stated another way, a district court has authority under Rule

6

54(b) (and federal common law)[3] to reconsider its interlocutory orders. *Id.*; *Cameron v. Ohio*, 344 F. App'x 115, 117–18 (6th Cir. 2009); *Cox v. Allen*, No. 3:18-CV-00147-GNS-CHL, 2021 WL 723277, at *2 (W.D. Ky. Feb 24, 2021). An order granting summary judgment on some but not all the claims in a suit—like the Court's March 31, 2021 Memorandum Opinion and Order— is "merely an interlocutory summary adjudication." *Franzen*, 1992 WL 377074, at *2; *see also id.* at *2 n.3 (explaining that a "grant of partial summary judgment under Rule 56 is not a judgment as defined in Rule 54(a)," and it remains interlocutory until the remainder of the case is disposed of (citations omitted)). As such, it is subject to reconsideration under Rule 54(b), which permits review of *interlocutory* orders, but not Rule 59(e), which allows a court to alter or amend its *final* orders.

Having determined that Rule 54(b) is the proper procedural vehicle to reconsider the March 31, 2021 Memorandum Opinion and Order, the Court considers the appropriate standard of review. As the Sixth Circuit has explained, district courts may afford relief from their interlocutory orders "as justice requires." *Rodriguez*, 89 F. App'x at 959 (quoting *Citibank N.A. v. Fed. Deposit Ins. Corp.*, 857 F. Supp. 976, 981 (D.D.C. 1994)) (internal quotation marks omitted). "Traditionally, courts will find justification for reconsidering interlocutory orders when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Id.* (citation omitted). A Rule 54(b) motion to reconsider "may not, however, 'serve as a vehicle to identify facts or raise legal arguments which could have been, but were not, raised or adduced during the pendency of the motion of which reconsideration [is] sought.'" *Saunders v. Ford Motor Co.*, 3:14-CV-00594-JHM, 2015 WL

---

[3] Notably, a district court has inherent authority to reconsider its interlocutory orders at any time prior to the entry of a final judgment adjudicating all of the claims and rights and liabilities of all parties. *See, e.g.*, *Franzen v. CSX Transp., Inc.*, 983 F.2d 1066 (Table), 1992 WL 377074, at *2 (6th Cir. 1992).

13547825, *2 (W.D. Ky. Aug. 4, 2015) (quoting *Owensboro Grain Co., LLC v. AUI Contracting, LLC*, No. CIV.A. 4:08CV-94-JHM, 2009 WL 650456, at *2 (W.D. Ky. Mar. 10, 2009)).

In the present case, Plaintiffs do not argue that any changes in the law affect the legal sufficiency of the Court's ruling, nor do they present any new, previously unavailable evidence. The Court therefore understands that Plaintiffs ask the Court to reconsider its dismissal of Correct Care and Nurse McKinney "to correct a clear error of law or prevent manifest injustice." [R. 160, p. 1].

## III.   ANALYSIS

According to Plaintiffs, the Court should reconsider its March 31, 2021 Memorandum Opinion and Order because (1) the Court considered whether the seriousness of Culpepper's condition was obvious to Nurse McKinney without providing Plaintiffs notice of and an opportunity to respond to that argument; (2) the Court resolved two disputed issues of material fact in favor of Correct Care and Nurse McKinney; (3) the Court failed to address evidence that Nurse McKinney directed the PTS officers to provide antacids to Culpepper; and (4) Plaintiff was not required to provide expert testimony on causation, and the Court therefore erred in dismissing Plaintiffs' state law negligence and wrongful death claims. *Id.* At 2–12. Lastly, Plaintiff argues that Correct Care is vicariously liable for Nurse McKinney's conduct so, should the Court vacate its earlier decision to dismiss Nurse McKinney, Correct Care should also remain a defendant. *Id.* at 12. In the alternative, if the Court denies Plaintiffs' motion, Plaintiffs ask that the Court certify its dismissal of Correct Care and Nurse McKinney as final and appealable under Rule 54(b). The Court addresses each of Plaintiffs' arguments in turn.

## A.  Notice and Opportunity to Respond Under Rule 56(f)

Plaintiffs first argue that the Court violated Federal Rule of Civil Procedure 56(f) by resolving an issue in favor of Correct Care and Nurse McKinney without first giving Plaintiffs notice and an opportunity to respond. [R. 160, p. 2–3]. Rule 56(f) addresses a Court's ability to enter summary judgment *sua sponte*. It provides that, "[a]fter giving notice and a reasonable time to respond, the court may" grant summary judgment for the nonmoving party; grant summary judgment on legal or factual grounds not raised by either party; or consider summary judgment on its own. Fed. R. Civ. P. 56(f); *see also* Fed. R. Civ. P. 56 advisory committee's note to 2010 amendment. A court's decision to grant summary judgment *sua sponte* is reviewed for an abuse of discretion. *Smith v. Perkins Bd. of Educ.*, 708 F.3d 821, 828 (6th Cir. 2013) (citation omitted). If the reviewing court determines that the district court abused its discretion, the matter is reversed and remanded "to provide the district court the opportunity to review all of the evidence before making a substantive decision." *Id.* (quoting *Bennett v. City of Eastpointe*, 410 F.3d 810, 816 (6th Cir. 2005)) (internal quotation marks omitted).

While "[e]ntry of summary judgment on grounds not raised or argued by the parties is 'discourage[d]," it can be done "in certain limited circumstances, 'so long as the losing party was on notice that [it] had to come forward with all of [its] evidence.'" *Smith*, 708 F.3d at 829 (quoting *Shelby Cnty. Health Care Corp.* v. *S. Council of Indus. Workers Health & Welfare Trust Fund*, 204 F.3d 926, 931 (6th Cir. 2000)) (internal quotation marks omitted). In considering whether the losing party had adequate notice, "[t]he key inquiry is whether the losing party was on notice that he had to muster the necessary facts to withstand summary judgment, lest he face dismissal of his claims." *Id.* (quoting *Excel Energy, Inc. v. Cannelton Sales Co.*, 246 F. App'x 953, 959–60 (6th Cir. 2007)) (internal quotation marks omitted).

9

"However, even when the district court fails to provide adequate notice to the party against whom summary judgment is granted, its judgment will be upheld unless the losing party can demonstrate prejudice." *Id.* (citing *Excel Energy*, 246 F. App'x at 959–60). Without a showing of prejudice, "remanding the case to the district court would merely entail an empty formality with no appreciable possibility of altering the judgment." *Id.* (citing *Excel Energy*, 246 F. App'x at 959–60). Thus, "[t]he inquiry is two-fold: losing parties must demonstrate both that they lacked sufficient notice of the district court's action and that they suffered prejudice as a result." *Id.*

In the present case, Plaintiffs point to the Court's finding that Culpepper did not present to Nurse McKinney with an obvious serious medical need. *Id.* at 2; *see also* [R. 158, pp. 39–41]. In its Memorandum Opinion and Order, the Court explained that, because Culpepper did not present to Nurse McKinney with an *obvious* serious medical need, Plaintiffs were required to come forward with medical evidence of causation. [R. 158, pp. 39–41]. They failed to do so, and the Court ultimately granted summary judgment in favor of Nurse McKinney on Plaintiffs' § 1983 deliberate indifference claim. *Id.* at 41. Plaintiffs now take issue with this ruling because they allege that Correct Care and Nurse McKinney never argued that Culpepper's serious medical needs were not obvious to Nurse McKinney; rather, they argued that McKinney recognized and took appropriate actions to address his needs.  [R. 160, p. 2]. Plaintiffs therefore argue that the Court violated Rule 56(f) "by resolving a critical issue in favor of [Correct Care and Nurse McKinney] that was not raised in their motion or their reply without first giving Plaintiffs notice and an opportunity to respond." *Id.* at 3.

As an initial matter, the Court disagrees with Plaintiffs' contention that the obvious nature of Culpepper's medical needs was not addressed in the parties' briefs. In Correct Care and Nurse McKinney's motion, they explained that "a plaintiff must establish both the objective and

10

subjective components" of a deliberate indifference claim. [R. 159, p. 11 (citing *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004))]. They went on to explain that "The objective component requires that a prisoner show the existence of a 'sufficiently serious' medical need, which is one 'that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Id.* (quoting *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008)). They also spent a significant portion of their brief detailing Nurse McKinney's initial observations of Culpeper. *Id.* at 6–7.

Then, in response, Plaintiffs argued:

Under the objective prong, the medical need must be one that would be "obvious even to a lay person." *Mingus v. Butler,* 591 F.3d 474, 480 (6th Cir. 2010) (quoting [*Blackmore*, 390 F.3d at 897]). A clear manifestation of severe pain due to a bleeding ulcer is just such a need. *See Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976); *Massey v. Hutto,* 545 F.2d 45, 46–47 (8th Cir. 1976).

[R. 153, p. 12]. Plaintiffs did not develop this argument further, despite an opportunity to do so in their response brief. Having reviewed these briefs, the Court finds that the issue of whether Culpepper's serious medical need was obvious to Nurse McKinney *was* raised by the parties—if not by Correct Care and Nurse McKinney, then certainly by Plaintiffs. Plaintiffs desire to more fully develop that argument is an improper basis for a motion to reconsider. *See Saunders*, 2015 WL 13547825, at *2.

Further, even if the Court found that this issue had not been raised in the briefing, it would still find that Plaintiffs received adequate notice and were not prejudiced by the Court's *sua sponte* consideration of this issue, as discussed below.[4]

---

[4] While this two-step analysis is typically employed by appellate courts on appeal, district courts have also turned to this same analysis when ruling on a motion to reconsider a *sua sponte* granting of summary judgment. *See, e.g.*, *Shaw v. Donahoe*, No. 11-2859-STA-tmp, 2014 WL 2093585, *3–4 (W.D. Tenn. May 19, 2014).

### 1.   Adequate Notice

To determine whether Plaintiffs had sufficient notice of the possibility that summary judgment might be granted against them, the Court "looks to the totality of the proceedings." *Smith*, 708 F.3d at 829 (quoting *Turcar, LLC v. I.R.S.*, 451 F. App'x 509, 513 (6th Cir. 2011)) (internal quotation marks omitted). For example, the Court "considers whether the prevailing party moved for summary judgment; whether the losing party moved for summary judgment; what issues the parties focused on in their briefs; what factual materials the parties submitted to the court; and whether motions were filed by co-defendants." *Id.* (quoting *Turcar*, 451 F. App'x at 513) (internal quotation marks omitted). The Sixth Circuit has further explained,

> Generally, procedural concerns are highest where summary judgment was granted absent a party motion or where the court granted summary judgment in the non-moving party's favor. By contrast, a decision in the moving party's favor, even if on an alternative basis than those argued before the court, is a less extreme *sua sponte* action, because the moving party's motion puts its opponent on at least some notice that defensive action is required.

*Turcar*, 451 F.3d at 513 (citations omitted). Simply stated, a district court can grant summary judgment *sua sponte* "when 'the basis for granting summary judgment [is] embraced within the evidence and arguments presented by the parties.'" *Smith*, 708 F.3d at 830 (quoting *Turcar, LLC v. I.R.S.*, 451 F. App'x 509 (6th Cir. 2011)).

In *Smith v. Perkins Board of Education*, a case cited by the defendants, the Sixth Circuit considered the totality of the lower court proceedings and found that the losing party had *not* received adequate notice that summary judgment could be granted against her on the merits. 708 F.3d at 829–30. The facts of that case are clearly distinguishable, however. In *Smith*, the defendants filed a motion for summary judgment arguing that one of the plaintiff's four causes of action was statutorily barred under state law and the other three claims were barred by the doctrine of collateral estoppel. *Id.* at 824. Discovery had not yet concluded, and the parties

12

ongoing discovery disputes were held in abeyance pending resolution of the summary judgment motion. *Id.* The district court ultimately granted summary judgment in favor of the defendants on all four claims, noting that one claim was statutorily barred, and another was barred by collateral estoppel. *Id.* The court also determined that one of the remaining claims failed on the merits and the other had been insufficiently pleaded, even though neither of those issues had been briefed or argued by the parties. *Id.* at 824–25.

In considering whether the plaintiff received adequate notice, the Sixth Circuit noted that the motion for summary judgment had been narrow, and even the caption of the motion limited its subject matter to the defendants' "Seventeenth Affirmative Defense." *Id.* at 829. Further, "the argumentation through three briefs . . . dealt entirely with collateral estoppel and the operation of" a specific state law and "[n]o mention was made of the possibility that summary judgment would be granted on some other basis." *Id.* at 830. The Court also noted that the plaintiff "could not have been expected to 'come forward with all of [her] evidence'" because discovery had not yet concluded, and plaintiff had argued that additional discovery was necessary. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986)). The Court therefore found that the plaintiff "did not have sufficient notice that summary judgment would be granted against her on alternative grounds." *Id.* at 829.

By contrast, in this case, the defendants' motions were much broader in nature. *See* [R. 149; R. 153; R. 155]. For example, Correct Care and Nurse McKinney's arguments were preceded by broadly worded headings: "Defendants are Entitled to Summary Judgment on Plaintiff's (sic) Eighth Amendment Claims" and "The Undisputed Material Evidence Precludes A Finding That Defendant McKinney Acted With Deliberate Indifference To [Culpepper's] Medical Needs." [R. 149, p. 11–12]. At no point did Correct Care and Nurse McKinney concede

13

that Culpepper's medical needs were obvious to Nurse McKinney. In fact, these defendants spent a significant portion of their brief reviewing Nurse McKinney's observations of Culpepper, including her observations that he was not exhibiting obvious signs of distress such as sweating or agitation. *Id.* at 6–7. Further, as noted above, Plaintiffs raised the "obviousness" issue in their response brief by arguing that a bleeding ulcer is an obvious serious medical need. [R. 153, p. 12].

Further, unlike in *Smith*, discovery had concluded by the time the defendants filed their motions for summary judgment, and neither party suggested that any additional discovery was needed. *See, e.g.*, [R. 98 (setting discovery deadline of November 1, 2019)]. Lastly, the Court notes that it granted summary judgment in favor of the moving parties, Correct Care and Nurse McKinney. As noted above, "a decision in the moving party's favor, even if on an alternative basis than those argued before the court, is a less extreme *sua sponte* action, because the moving party's motion puts its opponent on at least some notice that defensive action is required." *Turcar*, 451 F.3d at 513 (citations omitted).

Based on the motions and briefs in this case, and the broad issues argued by the parties, the Court finds that Plaintiffs were aware that they should "come forward with all of [their] evidence." *Smith*, 708 F.3d at 829 (quoting *Shelby Cnty. Health Care*, 204 F.3d at 931) (internal quotation marks omitted). This included any evidence and argument in support of their contention that Culpepper's serious medical need was obvious to Nurse McKinney (or, in the alternative, that there existed medical proof of causation). Had Plaintiffs wished to develop their arguments more fully on that issue, they had sufficient opportunity to do so through extensive briefing. The Court therefore finds that, based on a totality of the circumstances, Plaintiffs had sufficient notice that summary judgment could be granted against them on the basis that there

14

was insufficient evidence that Culpepper's serious medical need was obvious to Nurse McKinney.

### 2. Prejudice

The Court further finds that, even if Plaintiffs lacked adequate notice, they have failed to demonstrate prejudice. As the Sixth Circuit has explained, "[i]n addition to lack of notice, a losing party must also demonstrate that it was prejudiced by the district court's failure to provide an opportunity to respond with more evidence." *Smith*, 708 F.3d at 830–31 (citations omitted). "The losing party must 'demonstrate[] that it could have produced new favorable evidence or arguments had more notice been given.'" *Id.* at 831 (quoting *Turcar*, 451 F. App'x at 515). For example, in *Smith*, discovery had not concluded. In fact, the parties' ongoing discovery disputes had been held in abeyance pending resolution of the motion for summary judgment, and the plaintiff had been "prevented from further developing the record because summary judgment was granted and the discovery dispute was prematurely ended." *Id.* The Sixth Circuit explained, "Had Plaintiff been given notice that the district court was considering granting summary judgment on alternative grounds, she could conceivably have sought or produced additional evidence to defend against summary judgment." *Id.* Plaintiff also identified for the Sixth Circuit the evidence she would have sought or produced in support of her claims. *Id.* The Court found that such evidence could have been sufficient to overcome summary judgment. *Id.* Plaintiff had therefore "demonstrated the likelihood of prejudice." *Id.*

In this case, discovery had concluded prior to the filing of the motions for summary judgment. *See, e.g.*, [R. 98]. More importantly, perhaps, Plaintiffs do not argue that they could have presented "new favorable evidence or arguments" had they been given more notice. Instead, Plaintiffs rely on evidence already in the record, to make an argument already

considered by the Court. More specifically,  Plaintiffs argue that "[t]he seriousness of Culpepper's condition was obvious to McKinney—that's why she claims she summoned [Correct Care's] Director of Nursing Cody Pittman to determine whether Culpepper should be turned over to PTS for what she knew would be a lengthy, over-the-road transport." [R. 160, p. 3]. Plaintiffs apparently believe that the serious nature of Culpepper's condition was so obvious to Nurse McKinney that "[t]he obviousness of Culpepper's condition was not at issue" at the summary judgment stage. *Id.*

For support, Plaintiffs cite to Nurse McKinney's deposition testimony. *Id.* at 2–3. They cite specifically to her testimony that she first encountered Culpepper in the booking area, lying on the floor in the fetal position complaining of stomach pain and a history of ulcers, at which point she called the Director of Nursing. *Id.* at 2; *see also* [R. 149-4, pp. 46–47]. As Plaintiffs acknowledge, however, this deposition was already filed in the record at the time the Court ruled on the summary judgment motions. *See* [R. 160, p. 3, n.1]. As a result, this does not constitute "new favorable evidence" that Plaintiffs could have presented to the Court had they had more notice.

Nor do Plaintiffs present a new argument that the Court failed to consider. In fact, the Court references Nurse McKinney's testimony in detail its Memorandum Opinion and Order. *See, e.g.*, [R. 158, p. 40]. The Court referred to Nurse McKinney's testimony that she first observed Culpepper in a fetal position, complaining of stomach pain, and he told her that he had a history of ulcers. *Id.* The Court also cited to Nurse McKinney's testimony—overlooked by Plaintiffs—that, beyond lying in a fetal position, Culpepper was not exhibiting any other signs of pain, he was not sweating or agitated, and there were "[n]o obvious signs of distress." *Id.* (quoting [R. 149-4, p. 50–51]). The Court also explained that Nurse McKinney's testimony was

16

corroborated by PTS Officer Earnhart's testimony. *Id.* Earnhart had testified that Culpepper complained of an ulcer and held his hand against his stomach, [R. 149-2, pp. 97–98], but she described Culpepper as engaging in "normal conversation" and noted that he did not appear to be in "agonizing pain." *Id.* at 79–80. The Court thoroughly considered this testimony and the evidence of record, as well as established Sixth Circuit case law, and concluded that a reasonable jury could not find that Culpepper presented to Nurse McKinney with an obvious serious medical need. [R. 158, pp. 40–41]. In asking the Court to reconsider that ruling, Plaintiffs have failed to point to any new evidence or arguments that they would have presented to the Court had they been given more notice.

Lastly, the Court notes that Plaintiffs' § 1983 claim against Nurse McKinney included both an objective and subjective component. *See, e.g.*, *J.H. v. Williamson County*, 951 F.3d 709, 722–23 (6th Cir. 2020); [R. 158, p. 39]. Because the Court ruled that a reasonable jury could not find that Culpepper presented with an obvious serious medical need, it found that the objective element of the § 1983 claim failed. [R. 158, pp. 39–41]. It then found that, *even if Culpepper presented with an obvious serious medical need*, the subjective element of Plaintiffs' claim also failed. *Id.* at 41–45.  Plaintiffs now dispute the Court's ruling on the objective element of its § 1983 claim, but they do not explain how the Court's analysis of the subjective element would have changed had the parties been given more notice. In other words, even if the Court had found in Plaintiffs' favor on the objective element, it would still have granted summary judgment against them on their § 1983 claim against Nurse McKinney.[5]

---

[5] To the extent that Plaintiffs argue that a reasonable jury could have concluded that McKinney failed to summon the Director of Nursing to evaluate Culpepper, and the Court therefore should have ruled differently with respect to the subjective element of the § 1983 claim, that argument is addressed below.

In sum, the Court finds that, even if the parties did not raise the issue of whether Culpepper's serious medical need was obvious to Nurse McKinney, Plaintiffs were on notice that summary judgment could be granted against them on that issue. Further, even if Plaintiffs lacked adequate notice of that issue, they have failed to "demonstrate[] that [they] could have produced new favorable evidence or arguments had more notice been given." Smith, 708 F.3d at 831 (quoting Turcar, 451 F. App'x at 515) (internal quotation marks omitted). In other words, even if Plaintiffs lacked adequate notice, they have not shown any prejudice. The Court will therefore deny Plaintiffs' Motion to Reconsider, [R. 160], to the extent it seeks reconsideration based on this Court's failure to comply with Rule 56(f).

## B.  Disputed Issues of Material Fact

Plaintiffs next argue that the Court "resolved critical and vigorously disputed fact issues in favor of" Correct Care and Nurse McKinney [R. 160, p. 3]. By doing so, Plaintiffs argue, the Court "violated controlling law that, on motion for summary judgment, '[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Plaintiffs also note that a judge considering a motion for summary judgment should not attempt to determine the truth of the matter but should instead determine whether a genuine issue of material fact exists. *Id.* (quoting *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014)).

Plaintiffs point to two factual issues that they argue were improperly resolved in favor of Correct Care and Nurse McKinney. First, Plaintiffs again point to the Court's finding that a reasonable jury could not find that Culpepper presented to Nurse McKinney with an obvious serious medical need. *Id.* at 4–6; *see also* [R. 158, p. 40]. Next, Plaintiffs argue that a reasonable jury could have concluded that McKinney failed to summon the Director of Nursing to the

booking area to evaluate Culpepper. [R. 160, p. 6–10]. The Court addresses each of these issues in turn.

### 1. A Reasonable Jury Could Not Find That Culpepper Presented to Nurse McKinney with an Obvious Serious Medical Need

On this issue, Plaintiffs first argue that the Court "erred in giving controlling weight to the testimony of McKinney that Culpepper exhibited 'no obvious signs of distress,' and to the testimony of PTS employee Alva Earnhart—who was also a named Defendant in this case—that Culpepper did not appear to be in 'agonizing pain.'" [R. 160, p. 4]. Plaintiff argues that "their testimony is contradicted by their admissions of Culpepper's observed condition" and both defendants "have an obvious incentive to minimize Culpepper's distress to avoid moral and legal culpability for what followed." *Id.*

The Court agrees that, at the summary judgment stage, it should not improperly weigh the evidence to determine "the truth of the matter," and it should "determine whether there is a genuine issue for trial." *See Tolan*, 572 U.S. at 656 (quoting *Anderson*, 477 U.S. at 249) (internal quotation marks omitted). However, Plaintiffs overlook other key principles in summary judgment jurisprudence. For example, the moving party bears the initial burden "of informing the district court of the basis for its motion, and identifying those portions" of the record that "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). However, once that burden is satisfied, the non-moving party must produce "specific facts, supported by evidence in the record, upon which a reasonable jury could find there to be a genuine fact issue for trial." *Bill Call Ford, Inc. v. Ford Motor Co.*, 48 F.3d 201, 205 (6th Cir. 1995) (citation omitted). Further, while it is true that "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor," *Anderson*, 477 U.S. at 255, the Court is not obligated to "search the entire record to establish that it is bereft

of a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001). Rather, "the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *Id.* The non-moving party must also do more than merely show that there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citations omitted). Instead, he or she is required to present specific facts showing a genuine factual issue and must cite to particular materials in the record (e.g., depositions). *See* Fed. R. Civ P. 56(c)(1). Importantly, "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson,* 477 U.S. at 252. These key principles were set forth in detail in the Court's Memorandum Opinion and Order. [R. 158, pp. 9–10].

In the present case, the Court considered the evidence of record relating to Culpepper's medical condition at the time of Nurse McKinney's involvement. *Id.* at 40. This included Nurse McKinney's testimony, which was corroborated by PTS officer Earnhart's testimony. *Id.* Plaintiffs, as the non-moving party, were required to produce "specific facts, supported by evidence in the record, upon which a reasonable jury could find there to be a genuine fact issue for trial" with respect to this issue. *Bill Call Ford, Inc.*, 48 F.3d at 205 (citation omitted). Instead, they devoted only once sentence to this issue in their response brief: "A clear manifestation of severe pain due to a bleeding ulcer is" a serious medical need. [R. 153, p. 12 (citing *Westlake v. Lucas*, 537 F.2d at 860; *Massey*, 545 F.2d at 46–47). As the Court has already explained, this statement mischaracterizes the applicable law. Yet Plaintiffs simply relied on that statement, rather than pointing to any evidence that contradicts Nurse McKinney or Officer Earnhart's

testimony. In other words, they failed to satisfy their burden on this issue. Now, they ask the

Court to reconsider its ruling on this issue, but they again fail to cite to any evidence that

contradicts Nurse McKinney or Officer Earnhart's testimony. Further, to the extent they argue

the Court improperly weighed the evidence on this issue to determine the truth of the matter, the

Court notes that, due to Plaintiffs' failure to cite to any conflicting evidence, there was nothing to

weigh. Instead, the Court found that there was no genuine issue of material fact with respect to

this issue.

Plaintiffs also believe the Court erred in noting that Culpepper "did not become

disoriented and unresponsive" until after he was released to PTS because an inmate need not be

disoriented or unresponsive to present with an obvious serious medical need. *Id.* at 5. They cite

to four cases, each of which is distinguishable from this case. For example, Plaintiffs cite to

*Westlake v. Lucas*, 537 F.2d 857 (6th Cir. 1976) for the proposition that "an inmate's complaint

of pain for a bleeding ulcer represent[s] an obvious need for medical care." [R. 160, p. 5]. This is

a gross mischaracterization of the Court's holding in *Westlake*. In that case, the inmate had

alleged in his complaint that he advised the jail's admitting personnel that he suffered from an

ulcer, and he requested medication and a special diet. *Westlake*, 537 F.2d at 859. His requests

were repeatedly denied, despite frequent requests for treatment and multiple complaints of

stomach pains and abdominal distress. *Id.* He alleged that he began vomiting blood, but in

response was given only an antacid and was told that he could not see a doctor for two days. *Id.*

He further alleged that during the two-day waiting period, his repeated requests for medical care

went unanswered. *Id.* The Sixth Circuit held that the prisoner had "adequately stated a cause of

action for deprivation of needed medical care and the District Court was in error in dismissing the case at the pleading stage." *Id.* at 861.[6]

By contrast, the evidence of record in this case demonstrates that, when Nurse McKinney interacted with Culpepper, there were no prior complaints of ulcers or stomach pain in his record. *See, e.g.*, [R. 158, p. 40]. In other words, even if Culpepper had complained to jail staff on multiple occasions, those complaints were not in his records, and Nurse McKinney was not aware of any such complaints. As a result, those complaints could not inform her observations of Culpepper. Further, while he was lying in the fetal position and complained of stomach pain, McKinney did not observe any other obvious signs of physical distress—such as vomiting blood. *Id.* at 40. Simply stated, the Court did not find that Culpepper failed to present with an obvious serious medical need merely because he was not disoriented or unresponsive when observed by McKinney. Rather, the Court considered the evidence of record and all testimony before it, and ultimately found that a reasonable jury could not conclude that Culpepper presented to Nurse McKinney with an obvious serious medical need. *Id.*

Lastly, Plaintiffs point to the Court's finding that the record lacked any evidence that Culpepper had complained of a bleeding ulcer prior to the morning of his release. [R. 160, p. 6]. On this last point, Plaintiffs argue that Culpepper would have complained of his stomach pains and would have advised medical staff of his history of ulcers if they had conducted a physical/medical history within fourteen days of Culpepper's arrival at the jail, pursuant to Correct Care's policies. *Id.* Plaintiffs argue that "the Court should have assumed that such an

---

[6] The three other cases cited by Plaintiffs also present easily distinguishable facts. In *Estate of Carter v. City of Detroit*, 408 F.3d 305 (6th Cir. 2005), the plaintiff displayed "classic" signs of a heart attack, including chest pain and trouble breathing. *Id.* at 312. She had also stated that she was three days behind on her heart medications. *Id.* In *Johnson v. Karnes*, 398 F.3d 868 (6th Cir. 2005), the tendons in the plaintiff's hand had been completely severed. *Id.* at 876. In *Hartsfield v. Colburn*, 371 F.3d 454 (8th Cir. 2004), the plaintiff suffered "extreme pain from loose and infected teeth, which caused blood to seep from his gums, swelling, and difficulty sleeping and eating." *Id.* at 457. Culpepper, on the other hand, presented to Nurse McKinney with a single complaint of stomach pain.

assessment would have supported Plaintiffs' claims, not Defendants'" claims. *Id.* Plaintiffs also point to the sworn statement of Culpepper's fellow inmate, Kevin Williams, who stated that Culpepper had complained about his stomach pain both verbally and in writing to medical staff. *Id.*

The Court thoroughly considered Plaintiffs' arguments about Culpepper's prior complaints in its Memorandum Opinion and Order when considering Plaintiffs' § 1983 claim against Correct Care.[7] [R. 158, pp. 50–53]. To summarize that analysis, the Court found that Plaintiffs arguments were wholly undeveloped and highly speculative; Correct Care's alleged inadequacy in failing to conduct a medical history or physical within fourteen days of Culpepper's admission was not closely related to Culpepper's injury; Plaintiffs presented no evidence of a clear and persistent pattern of misconduct on the part of Correct Care; and Williams's sworn statement, *even if accepted as true*, would not have affected the Court's analysis as to Nurse McKinney or Correct Care. *Id.* On this last point, the Court explained that, even if Culpepper made several prior complaints as alleged by Williams, there was no evidence of any such complaints in his records, and they therefore could not have affected McKinney's understanding of the situation. *Id.* at 52.

Plaintiffs now argue that the Court improperly resolved these disputed issues of fact in favor of the defendants, and it should have instead found a genuine issue of material fact as to whether Culpepper presented to Nurse McKinney with an obvious serious medical need. [R. 160, pp. 5–6]. The Court thoroughly addressed these arguments in its Memorandum Opinion and Order. [R. 158, pp. 50–53]. As noted above—and as explained in the Court's Memorandum

---

[7] Notably, Plaintiffs now raise these issues when arguing that the Court improperly concluded that no reasonable jury could find that Culpepper presented to Nurse McKinney with an obvious serious medical need. They do not argue that the Court improperly granted summary judgment on the § 1983 claim against *Correct Care*.

Opinion and Order—there is no evidence suggesting that Nurse McKinney was aware of any prior complaints by Culpepper (and Plaintiffs do not point to any such evidence now). As a result, any such complaints could not inform Nurse McKinney's observations of Culpepper. Thus, even if the Court had inferred from the evidence of record that Culpepper had, in fact, complained to jail staff about his stomach issues, and even if the Court assumed that Culpepper would have advised medical staff of his history of ulcers during a physical, *these facts would not have changed the Court's analysis with respect to Nurse McKinney*. Though Plaintiffs may disagree with the Court's analysis, that alone is an insufficient basis to seek reconsideration of the Court's ruling. *See, e.g.*, *Colter v. Bowling Green-Warren Cnty. Regional Airport Bd.*, No. 1:17-cv-00118-JHM, 2018 WL 775366, *2 (W.D. Ky. Feb. 7, 2018) ("Plaintiff may disagree with the Court's decision, but that is an issue for appeal, not reconsideration.").

Further, the Court is not required to make "strained and unreasonable" inferences in favor of the non-moving party. *Fox v. Amazon.com, Inc.*, 930 F.3d 415, 425 (6th Cir. 2019) ("[S]ummary judgment 'does not allow, much less require that we draw strained and unreasonable inferences in favor of the nonmovant.'" (quoting *Audi AG v. D'Amato*, 469 F.3d 534, 545 (6th Cir. 2006))). Here, Plaintiff asks the Court to make unreasonable, highly speculative inferences based on less than a scintilla of evidence, or even no evidence at all. It would be inappropriate to make such strained, unsupported inferences at the summary judgment stage, and it is inappropriate to seek reconsideration of the Court's ruling on that basis. Regardless, as noted above, even if the Court were willing to make such strained inferences, its analysis with respect to Nurse McKinney would not change.

Accordingly, the Court will deny Plaintiffs' Motion to Reconsider, [R. 160], to the extent they argue the Court improperly resolved disputed issues of material fact in favor of the

defendants on the issue of whether Culpepper presented to Nurse McKinney with an obvious serious medical need.

### 2. A Reasonable Jury Could Not Conclude that McKinney Failed to Summon the Nursing Director for Assistance

Next, Plaintiffs argue that a reasonable jury could have concluded that McKinney did not summon the Nursing Director. *Id.* at 6–10. They argue that McKinney was not qualified to release Culpepper for transport, and her failure to summon the Nursing Director "would have violated the standard of care and obviating (sic) the need for any expert testimony on that issue." [R. 160, p. 6].

As an initial matter, the Court must point out that it held that expert testimony was necessary to establish *causation*. [R. 158, pp. 56]. With respect to the *standard of care*, the Court first noted that the defendants had provided a written report by their nursing expert, [R. 157-1], in which that expert opined that Nurse McKinney did not violate the applicable standard of care. [R.158, p. 54]. As a result, the Court held that Correct Care and Nurse McKinney had "identified portions of the record 'which [they] believe demonstrate the absence of a genuine issue of material fact.'" *Id.* (quoting *Celotex Corp.*, 477 U.S. at 323). In other words, they satisfied their burden as the moving party, and Plaintiffs were therefore required to produce "specific facts, supported by the evidence in the record, upon which a reasonable jury could find there to be a genuine fact issue for trial." *Id.* (quoting *Bill Call Ford, Inc.*, 48 F.3d at 205) (internal quotation marks omitted). However, Plaintiffs merely reasserted their theory that Nurse McKinney released Culpepper for transport without consulting with her Director of Nursing, without citing to any evidence supporting that theory. *Id.* (citing [R. 153, p. 19]).

The Court thoroughly addressed Plaintiffs' argument in its Memorandum Opinion and Order. [R. 158, pp. 43–45, 55]. The Court explained that "[t]he evidence of record clearly demonstrates that Nurse McKinney immediately sought assistance upon learning of Culpepper's complaints of stomach pain." *Id.* at 55. Nurse McKinney's testimony to that effect was corroborated by the testimony of PTS Officer Earnhart. *Id.* On the other hand, there was "no evidence to corroborate Plaintiffs' theory that Nurse McKinney simply abandoned Culpepper and did not seek assistance." *Id.* In reaching this conclusion, the Court considered the deposition testimony of Cody Pittman, the Director of Nursing; the fact that he had signed Culpepper's Patient Prescription Eligibility Form; and the lack of any documentation that he had assessed Culpepper. *Id.* at 43–45.

Now, Plaintiffs attempt to challenge the Court's ruling by pointing to the same evidence already considered by the Court, namely, Pittman's deposition. Plaintiffs argue that "Pittman *emphatically* denied any knowledge of Culpepper or the events described by McKinney." [R. 160, p. 7]. They cite to portions of his deposition, however, which clearly contradict that statement. *Id.* at 7–8. As Pittman clearly stated, he *did not recall* interacting with Nurse McKinney or Culpepper on the evening in question. *See, e.g.*, [R. 154-6, pp. 42–43]. Nowhere in his deposition does Pittman "emphatically deny" being called to the booking area by Nurse McKinney or observing Culpepper. In fact, he agreed that "it might have happened." *Id.* at 43. The Court noted this in its Memorandum Opinion and Order, explaining that Pittman's testimony did not contradict Nurse McKinney's testimony. [R. 158, pp. 44–45]. For example, Pittman explained in his deposition that he would have documented any assessment of Culpepper, and no such documentation exists in the record. [R 154-6, pp. 43–44]. However, this testimony did not contradict Nurse McKinney's testimony because she never claimed to see Pittman performing a

full assessment. *See* [R. 158, pp. 44–45]. Plaintiffs' present reliance on Pittman's testimony is therefore misplaced.

Further, to the extent that Plaintiffs cite to the testimony of Pittman, Nurse McKinney, or PTS Officer Earnhart to argue that the Court improperly "assigned controlling weight to disputed and self-serving testimony," [R. 160, p. 10], the Court once again reminds Plaintiffs of their duty at the summary judgment stage. As the nonmoving parties, Plaintiffs were required to respond to the defendant's arguments (and evidence) by pointing to specific portions of the record demonstrating a genuine issue of material fact. *Bill Call Ford, Inc.*, 48 F.3d at 205. Notably, they were required to respond with more than a mere scintilla of evidence in support of their position. *Anderson*, 477 U.S. at 252. And, as the Court explained at length in its Memorandum Opinion and Order, Plaintiffs could not simply "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact"; instead, they were required to "present affirmative evidence" in support of their position. [R. 158, p. 45 (quoting *Alba v. Marietta Mem'l Hosp.*, 202 F.3d 267, *3 (6th Cir. 2000) (internal quotation marks omitted)]. To the extent Plaintiff's theorized that Nurse McKinney fabricated her testimony and never consulted Pittman, and instead approved Culpepper for transport on her own, the Court found that Plaintiffs failed to produce more than a mere scintilla of evidence to support such a theory. *Id.* Now, in asking the Court to reconsider its decision, Plaintiffs offer no new evidence and instead mischaracterize the evidence of record already considered by the Court.

Lastly, the Court must address Plaintiffs' references to the Patient Prescription Eligibility Form. Plaintiffs argue that the Court improperly "credited McKinney's testimony that she brought the Patient Prescription Eligibility Form *unsigned to the booking area* prior to Culpepper's release." [R. 160, p. 9]. As the Court explained in its Memorandum Opinion and

Order, Nurse McKinney testified that she brought the unsigned form to the booking area, and it would have been signed once Culpepper's medications were turned over to the PTS officers. [R. 158, p. 44]; *see also* [R. 149-4, p. 43]. Pittman acknowledged that his signature is on the form. [R. 154-6, p. 13]. The Court found that this piece of evidence "further corroborates Nurse McKinney's version of events—specifically, her testimony that Pittman was present in the booking area and approved Culpepper for transport." [R. 158, p. 44].

Plaintiffs now challenge the Court's analysis with respect to the form, but the basis for their argument is unclear. They cite to the fact that the form was faxed to the pharmacy and there is no copy in PTS's file on Culpepper. [R. 160, p. 9]. They seem to be arguing that the PTS Officers were never provided with a copy of the form, but this in no way contradicts Nurse McKinney's testimony that she brought the unsigned form to the booking area, nor does it call into question Pittman's signature on the form. Further, Plaintiffs point to this evidence to argue that "the Form may never have been taken down to the booking area, *or it was unsigned when it was*." *Id.* at 10 (emphasis added). But this would corroborate the very testimony that they now seek to challenge, namely, Nurse McKinney's testimony that she brought the form—unsigned—to the booking area. The Court finds no merit in this nonsensical argument.

In sum, the Court finds that Plaintiffs have failed to point to any new evidence or argument that would alter the Court's prior analysis with respect to Pittman, the Nursing Director, and the issue of whether Nurse McKinney called him for assistance. Stated another way, Plaintiffs previously failed to satisfy their burden of producing more than a mere scintilla of evidence in support of their theory regarding Pittman, and they again fail to satisfy this burden when seeking reconsideration. It is inappropriate for Plaintiffs to seek reconsideration of the Court's decision merely because they disagree with it. *See, e.g.*, *Colter*, 2018 WL 775366, *2

(W.D. Ky. Feb. 7, 2018). Accordingly, the Court will deny their Motion to Reconsider, [R. 160], to the extent they argue for reconsideration on these grounds.

### C. Consideration of Evidence that McKinney Directed the PTS Officers to Provide Antacids to Culpepper

Plaintiffs next argue that the Court failed to address evidence that McKinney advised the PTS transport officers to give Culpepper an antacid. [R. 160, p. 10]. This event allegedly occurred at approximately 12:45 a.m., about an hour into Culpepper's journey in the PTS van. [R. 149-2, p. 81]. At that time, he complained of abdominal pain, and one of the PTS officers contacted a nurse at LMDC and asked if he could give Culpepper an antacid, and then did so. [R. 149-7, pp. 50–53, 55]; *see also* [R. 149-2, p. 72]. The PTS officer testified that he believed he spoke with a female nurse and it "might've been McKenney." [R. 149-7, p. 62]. Nurse McKinney denied ever speaking to the PTS officers after they left LMDC. [R. 149-4, pp. 63–64]. Plaintiffs argue that this presents an unresolved, material fact that could serve as an independent basis for liability under § 1983 and state law. *Id.* Plaintiffs spend less than a single page on this argument, and the Court finds it to be wholly undeveloped. Nevertheless, the Court will attempt to address Plaintiffs' concerns.

The antacid issue was first raised in Correct Care and Nurse McKinney's Motion for Summary Judgment. [R. 149, pp. 8, 13–14]. The defendants argued that, even assuming that Nurse McKinney authorized the PTS officers to provide antacids to Culpepper, "such a fact is insufficient, as a matter of law, to create a genuine issue of material fact regarding the subjective component of deliberate indifference." *Id.* at 13. At most, they argued, she "authorized the administration of an over-the-counter antacid in response to Culpepper's stomach-related complaint," an action that was not unreasonable and did not demonstrate an intent to cause harm.

*Id.* (citing *Verser v. Ghosh*, 925 F. Supp. 2d 1028, 1034 (N.D. Ill. 2013)). In response, Plaintiffs

devoted a single sentence to their argument:

> A reasonable jury could also conclude that having personally observed Culpepper
> curled in a fetal position from stomach pain, and then having been called from the
> road about Culpepper's continuing complaints, McKinney's suggestion that he be
> given Tums was 'care' so cursory that it amounted to no care at all and evidenced
> her deliberate indifference to his condition.

[R. 153, p. 15 (citing *McElligott v. Foley*, 182 F.3d 1248, 1257–58 (11th Cir. 1999))].

Having reviewed these arguments, the Court first notes that Plaintiffs initially referenced

the antacid incident in support or their argument that Nurse McKinney had been deliberately

indifferent to Culpepper's serious medical needs; they did *not* argue that this incident provided

an independent basis for Nurse McKinney's liability under state law. *See* [R. 153, pp. 15, 18–

19]. They now raise this argument for the first time in their Motion to Reconsider, [R. 160,

p. 10]. However, as the Court has repeatedly admonished, it is inappropriate to seek

reconsideration "to identify facts or raise legal arguments which could have been, but were not,

raised or adduced during the pendency of the motion of which reconsideration [is] sought."

*Saunders*, 2015 WL 13547825, at *2 (quoting *Owensboro Grain Co.*, 2009 WL 650456, at *2)

(internal quotation marks omitted).

Further, even if the Court were to consider the antacid incident in relation to Plaintiffs'

state law claims, Plaintiffs still fail to provide the necessary evidence in support of those claims.

Stated another way, Plaintiffs have overlooked the crux of the Court's ruling on the state law

claims—the absence of any evidence of the standard of care and the lack of expert testimony to

establish causation. *See* [R. 158, pp. 53–57]. Plaintiffs fail to explain how Nurse McKinney's

alleged involvement in the distribution of antacids to Culpepper in any way changes the Court's

analysis on the standard of care and causation.

30

Accordingly, the Court will deny Plaintiffs' Motion to Reconsider, [R. 160], to the extent they argue that the Court failed to consider whether Nurse McKinney authorized PTS officers to provide antacids to Culpepper during his transport.

### D. Expert Testimony in Support of State Law Claims

In its Memorandum Opinion and Order, the Court found that Plaintiffs failed to put forth adequate evidence of a breach of the standard of care and causation, and as a result, Plaintiffs' state law claims—for negligence and wrongful death—both failed. [R. 158, pp. 53–57]. With respect to the causation element of their claims, the Court found that expert testimony was necessary, but Plaintiffs failed to produce any such evidence. *Id.* at 56. Plaintiffs now argue that the Court erred in finding that expert testimony was necessary to support their state law claims. [R. 160, p. 11–12]. They argue that the two exceptions to the expert-testimony requirement—admissions of negligence and res ipsa loquitor—apply in this case. *Id.* The Court addressed these exceptions in its Memorandum Opinion and Order. [R. 158, p. 56]. It expressly found that neither exception applies, and it noted that Plaintiff had not argued for the application of either exception. *Id.* As the Court has already explained, this alone would justify denying Plaintiffs' Motion to Reconsider on this issue. Nevertheless, the Court will address Plaintiffs' new arguments.

First, Plaintiffs again argue that a reasonable jury could find that Nurse McKinney failed to summon the Director of Nursing and instead determined on her own that Culpepper was fit for transport. *Id.* at 11. Plaintiffs also argue that Nurse McKinney admitted that she was not qualified to decide whether Culpepper was fit for transport. *Id.* They do not cite to her sworn testimony, however, and instead cite to the following statement in Correct Care and Nurse McKinney's reply brief:

> Because there is no material evidence to refute Nurse McKinney's testimony that she summoned her supervisor to address a situation that, she acknowledged, was beyond her capability to perform as an LPN, and because no reasonable inferences can be drawn from the evidence to the contrary, summary judgment in Nurse McKinney's favor is appropriate.

[R. 155, p. 8]. According to Plaintiffs, this would be an admission by Nurse McKinney such that her negligence would be apparent, assuming she never summoned the Director of Nursing and instead assessed Culpepper without assistance. [R. 160, p. 11]. As a result, they argue, no expert medical evidence is necessary. *Id.*

The Court disagrees. First, the Court has already explained that a reasonable jury could *not* find that Nurse McKinney failed to summon the Director of Nursing, as Plaintiffs failed to provide more than a mere scintilla of evidence in support of that argument. Nurse McKinney's statement, if any, that she was not qualified to decide whether Culpepper was fit for transport is therefore immaterial. Instead, the evidence of record indicated that she called the Director of Nursing for assistance, and he then approved Culpepper for transport. Plaintiffs offer no new evidence on this issue. This matter was argued to the Court and fully considered by the Court, and it is inappropriate for Plaintiffs to argue for reconsideration merely because they disagree with the Court's analysis. *See, e.g.*, *Colter*, 2018 WL 775366, *2 (W.D. Ky. Feb. 7, 2018).

Next, Plaintiffs argue that the doctrine of res ipsa loquitor applies in this case. For support, they argue that the Court improperly relied on the Supreme Court of Kentucky's decision in *Adams v. Sietsema*, 533 S.W.3d 172 (Ky. 2017).  However, this Court did not rely on—nor even directly cite to—*Adams* in its Memorandum Opinion and Order. Instead, it cited to *Ashland Hospital Corporation v. Lewis*, 581 S.W.3d 572 (Ky. 2019) for the proposition that, under Kentucky law, "expert opinion is [typically] required to establish causation in a medical

malpractice dispute." *Id.* at 578; *see also* [R. 158, p. 56]. The Court also cited to the Supreme

Court of Kentucky's explanation for this rule:

> This expert testimony requirement exists because "[m]ost medical malpractice
> claims involve issues of science or professional skill outside the ordinary
> experiences and range of knowledge of typical jurors and judges." [*Lewis*, 581
> S.W.3d at 578] (quoting *Adams v. Sietsema*, 553 S.W.3d 172, 179 (Ky. 2017)). As
> a result, most "medical malpractice claims cannot be proven without expert opinion
> testimony to establish that the conduct in question departed from the applicable
> standard of care and was a proximate cause of the damages claimed." *Id.* (quoting
> *Adams*, 533 S.W.3d at 179).

*Id.* These citations were included in the Court's Memorandum Opinion and Order to explain the

basis for the expert testimony requirement. The Court did not rely on the facts in *Lewis* or *Adams*

in determining that expert testimony was required in this case. Instead, the Court found that

neither exception to the expert testimony requirement applied, and Plaintiffs failed to provide

any expert opinion on causation. [R. 158, p. 56]. The Court further noted that Plaintiffs' response

to the summary judgment motion "[did] not even address the issue of causation with respect to

these two state law claims." *Id.*

Now, Plaintiffs wish to argue this point, despite ample opportunity to do so during the

extensive briefing of the defendants' motions for summary judgment. The Court *again* notes that

it is inappropriate to file a Rule 54(b) motion to reconsider to make arguments that could have

been made during the Court's consideration of the underlying motion. *Saunders*, 2015 WL

13547825, *2. Moreover, Plaintiffs still fail to point to any evidence that supports application of

either exception to the expert testimony requirement, nor do they provide the necessary expert

testimony. They briefly cite to the expert report of Dr. Robert Pfalzgraft, *see* [R. 101], and argue

that Dr. Pfalzgraft "opined that Culpepper should not have been transported anywhere other than

to a hospital." [R. 160, p. 12]. It is true that, in his deposition testimony, Dr. Pfalzgraft stated that

Culpepper "probably had a much better chance of surviving if he never took the trip and got

medical attention when it first came to light that he was having abdominal pain and having a high blood sugar." [R. 149-9, pp. 4–5]. However, at no point in their response to Correct Care and Nurse McKinney's summary judgment motion did Plaintiffs' reference Dr. Pfalzgraft's report or testimony. *See* [R. 153]. In fact, as the Court pointed out in its Memorandum Opinion and Order, Plaintiffs' response "does not even address the issue of causation with respect to [their] two state law claims." [R. 158, p. 56]. As noted above, Plaintiffs' bore the burden of pointing to specific portions of the record to support their position, and the Court was not obligated to "search the entire record to establish that it is bereft of a genuine issue of material fact." *In re Morris*, 260 F.3d at 655.

Regardless, even if the Court found that Dr. Pfalzgraft's brief and somewhat vague statement was sufficient to establish causation, Plaintiffs still fail to provide any evidence creating a genuine issue of material fact with respect to the standard of care.[8] This issue was thoroughly discussed in the Court's Memorandum Opinion and Order and was another basis— separate and distinct from the lack of expert testimony on causation—to grant summary judgment in favor of Correct Care and Nurse McKinney on the state law claims. [R. 158, pp. 54– 55]. In other words, Plaintiffs fail to explain how the Court's opinion would change, even assuming they provided the necessary expert testimony on causation.

In sum, Plaintiffs have improperly invoked Rule 54(b) to make arguments that they could have presented to the Court during briefing of the motions for summary judgment. Regardless, Plaintiffs have failed to demonstrate that either exception to the expert testimony requirement

---

[8] Plaintiffs also briefly argue that the causation issue was not argued by the defendants, and Plaintiffs were entitled to notice and an opportunity to respond to this issue under Rule 56(f). [R. 160, p. 6]. The Court need not consider this undeveloped argument at length, however. They do not challenge the Court's ruling on the standard of care, which served as an independent basis for granting summary judgment in favor of Nurse McKinney and Correct Care on the state law claims. [R. 158, pp. 54–55]. As a result, even assuming they lacked adequate notice, they cannot demonstrate prejudice.

applies in this case, and they have failed to provide any argument (or evidence) related to the standard of care. Accordingly, to the extent Plaintiffs seek reconsideration on this point, their motion will be denied.

### E.  Correct Care's Vicarious Liability

Plaintiffs argue that Correct Care "has vicarious liability for McKinney's misconduct, and should therefore remain a Defendant as to Plaintiffs' state claims irrespective of its independent negligence." [R. 160, p. 12 (citing *Patterson v. Blair*, 172 S.W.3d 361 (Ky. 2005)]. However, the Court will not alter or amend its decision to grant summary judgment in favor of Nurse McKinney, as explained above. In other words, the Court's dismissal of Nurse McKinney stands, and accordingly, any vicarious liability argument against Correct Care necessarily fails.

### F.  Plaintiffs' Request that the Court's Prior Decision be Made Final and Appealable Under Federal Rule of Civil Procedure 54(b)

Plaintiffs ask that, in the event the Court denies Plaintiffs' Motion to Reconsider, it certify its dismissal of Correct Care and Nurse McKinney as final and appealable, and further certify that there is no just reason for delay, citing Rule 54(b). That rule provides that, in cases where multiple parties are involved, "the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b). Otherwise, an order that "adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties," and as a result, said claims "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." *Id.*

Before entering final judgment as to only some claims or parties, the Court must first make "two independent findings." *Gen. Acquisition, Inc. v. GenCorp Inc.*, 23 F.3d 1022, 1026 (6th Cir. 1994). "First, the district court must expressly 'direct the entry of final judgment as to

35

one or more but fewer than all the claims or parties' in a case." *Id.* (quoting Fed. R. Civ. P. 54(b)). Then, after a partial final judgment has been made, "the district court must 'express[ly] determin[e] that there is no just reason' to delay appellate review." *Id.* at 1026 (quoting Fed. R. Civ. P. 54(b)).

The first step "is satisfied where some decision made by the district court ultimately disposes of one or more but fewer than all of the claims or parties in a multi-claim/multi-party action." *Id.* at 1026–27. For example, in this case, the Court's March 31, 2021 Memorandum Opinion and Order disposed of all claims against Defendants Correct Care and Nurse McKinney, but it allowed claims against other defendants (Dorris and Altamirano) to move forward. [R. 158]. The parties agree that that decision was "a final judgment as to one or more, but fewer than all, claims or parties" as required by Rule 54(b). *See* Fed. R. Civ. P. 54(b). The Court agrees and finds that the first step in the Rule 54(b) analysis is satisfied.

However, the parties disagree as to whether the second step—a determination of no just reason for delay—is satisfied in this case. *See, e.g.*, [R. 165, pp. 9–10]. This second step "requires the district court to balance the needs of the parties against the interests of efficient case management." *Gen. Acquisition*, 23 F.3d at 1027. Notably, "[n]ot all final judgments on individual claims should be immediately appealable, even if they are in some sense separable from the remaining unresolved claims." *Id.* (quoting *Curtiss–Wright Corp. v. General Elec. Co.*, 446 U.S. 1, 8 (1980)) (internal quotation marks omitted). Instead, the Court "must 'strike a balance between the undesirability of more than one appeal in a single action and the need for making review available in multiple-party or multiple-claim situations at a time that best serves the needs of the litigants.'" *Id.* (quoting Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2654 (1983 & Supp.1993)). To do so, the Court may consider the following factors:

> (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense and the like.

*Id.* (quoting *Corrosioneering, Inc. v. Thyssen Environmental Systems, Inc.*, 807 F.2d 1279, 1283 (6th Cir. 1986)). Further, courts should limit Rule 54(b) interlocutory appeals to "infrequent harsh case[s]." *Id.* (quoting *Rudd Construction Equip. Co., Inc. v. Home Insurance Co.*, 711 F.2d 54, 56 (6th Cir.1983)). By doing so, "courts can alleviate hardship resulting from unnecessary delay without undermining 'the historic federal policy against piecemeal appeals.'" *Id.* (quoting *Curtiss–Wright*, 446 U.S. at 8).

Correct Care and Nurse McKinney argue that "the overriding consideration [in this case] is judicial economy," which they argue weighs in favor of delaying entry of a final judgment "because the adjudicated and still-pending claims against the co-defendants are closely related and stem from events that are linked." [R. 165, p. 9]. They argue that a "unified appeal addressing all of the claims and parties in this factually and legally complex litigation would promote the interests of judicial economy." *Id.* (citation omitted). In response, Plaintiffs argue that their claims against Correct Care and Nurse McKinney are "entirely independent and separable" from their claims against the Missouri Defendants. [R. 166, p. 3].

The Courts finds that Plaintiffs' basis for requesting an entry of final judgment under Rule 54(b) is insufficient to overcome "the historic federal policy against piecemeal appeals." *Gen. Acquisition*, 23 F.3d at 1027 (quoting *Curtiss–Wright*, 446 U.S. at 8) (internal quotation marks omitted). As the Sixth Circuit has explained, "[n]ot all final judgments on individual claims should be immediately appealable, even if they are in some sense separable from the

remaining unresolved claims." *Id.* (quoting *Curtiss–Wright*, 446 U.S. at 8) (internal quotation marks omitted). While the claims against Correct Care and Nurse McKinney are in some sense separable from the remaining claims, this alone does not transform the case into one of the "infrequent harsh case[s]" meriting a Rule 54(b) final order. *Id.* (quoting *Rudd Construction Equip. Co., Inc. v. Home Insurance Co.*, 711 F.2d 54, 56 (6th Cir.1983)). In other words, the Court cannot find that this case presents "no just reason for delay" as required by Rule 54(b).

Accordingly, having balanced Plaintiffs' desire for an immediate appeal against the need for judicial economy, the undesirability of multiple appeals in a single case, and the long-standing federal policy discouraging piecemeal appeals, the Court will deny Plaintiffs' request for entry of a final judgment against Correct Care and Nurse McKinney.

## IV.   CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Plaintiffs' Motion to Reconsider Dismissal of the CCS Defendants, [**R. 160**], is **DENIED**.

This the 21st day of March, 2022.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY

cc: Counsel of Record

38